NEILSON et al. v. SCHOELLKOPF et al.
No. 12430.

Court of Civil Appeals of Texas. Dallas.
Nov. 12, 1938.

Rehearing Denied Dec. 10, 1938.

282

J. L. Goggans, of Dallas, for plaintiffs in error.

Hamilton, Lipscomb, Wood & Swift, of Dallas, for defendants in error.

BOND, Chief Justice.

Plaintiffs in error, children and beneficiaries under the will of O. F. Parks, brought this action to enjoin the sale under deeds of trust purportedly executed by Laura Parks, individually and as independent executrix and trustee under the will of O. F. Parks, of their interest in trust property and to cancel the deeds of trust in so far as they purport to cover their interest in the property.

Laura Parks, individually and as executrix and trustee under the will of O. F. Parks, on January 9, 1929, executed a note in the sum of $20,000, payable to Bess W. Schoellkopf, and to secure the note executed and delivered a deed of trust covering two tracts of land, located in the City of Dallas; and, on October 1, 1929, executed another note in the sum of $3,000, payable to J. Fred Schoellkopf, and a deed of trust upon another tract of land. The children of O. F. Parks owned a one-half beneficiary interest in the three tracts of land and Laura Parks, individually, owned the other one-half interest. The land was the community property of O. F. Parks and Laura Parks, and was being administered by Laura Parks under the will of O. F. Parks.

The appeal involves primarily the question as to whether the will of O. F. Parks conferred upon his wife, Laura Parks, as trustee and independent executrix, a power to mortgage the estate which she held for the benefit of the testator's children.

The pertinent features of the will of O. F. Parks reads:

"Second. My estate consists of my undivided one-half of the community estate of myself and wife, Laura Parks, situated in the State of Texas, and the State of Oklahoma.

"Third. I give and bequeath all my estate that I may be seized and possessed of at the time of my death, both real and personal, to my beloved wife, Laura Parks, in trust during her natural life or widowhood, for the use and benefit of my children, Oakley Fay Parks Brown, Annie L. Parks, Goldie Ray Parks, Dorthey C. Parks and Lonnie O. Parks, share and share alike. I give my wife the right to manage, control and lease any and all of my property during her natural life or widowhood, with full authority and right to sell and dispose of any portion of my said estate for the purpose of maintenance and education of our said children or for the purpose of reinvesting same, she to be the exclusive judge of the property to be sold and of the necessity for the sale, as well as the reinvestment of same, and she is to act independent of the action of any Court.

"Fourth. I desire and I hereby give my wife full management and control of my estate with authority to sell and make deed or deeds of conveyance to any part or parts thereof for the purpose of maintaining herself and our children and for the purpose of reinvestment and to reinvest same as to her may seem for the best interest of our estate, and I hereby give her full authority to reinvest any part of said estate as to her may seem for the best interest of my estate, so long as she remains a widow, or so long as she may desire to hold the community estate together, she to be the exclusive judge of the necessity to sell, and of the kind of investment to be made. In case my wife, Laura Parks, shall marry again, or in case she should grossly mismanage or squander my estate, then and in that event, I desire that all of my property on hand shall go to my said children, and I hereby bequeath to them, Oakley Fay Parks Brown, Annie L. Parks, Goldie Ray Parks, Dorthey C. Parks and Lonnie O. Parks, the remainder of my estate then on hand share and share alike, subject however, to the provision hereinafter made.

"Fifth. I desire that neither of my children shall dispose of their interest in my estate or any part thereof, in any manner whatever, contrary to the wishes of my wife during her widowhood. And in the event that they or either of them shall at-

tempt to sell their interest in my estate or transfer or dispose of same in any manner whatever, other than meets with the entire approval of my wife, Laura Parks at any time, during her widowhood, then and in such event the bequest above made as to such a one, either or all of them as may attempt to break my will or disregard my wishes herein stated shall be and is hereby revoked as to such a one either or all of them as may attempt to break my will or disregard my wishes herein expressed, and in lieu of such bequest herein made such a one, I hereby bequeath to each of them the sum of One Hundred Dollars, which is to be their full share in my said estate, and the balance of my estate shall go to my other children not contesting said will or disregarding my wishes herein expressed share and share alike.

"Sixth. I hereby nominate and appoint my beloved wife, Laura Parks, as the sole and independent executrix of this my last will and testament without bond, and it is my wish and I hereby provide that the probate Court or other Courts of Dallas County or in any other County in the State of Texas, or in the State of Oklahoma shall have no further jurisdiction or take any further action with reference to my estate, other than to probate this my will and require the filing of an inventory and appraisement of my estate.

"Seventh. I hereby appoint my beloved wife Laura Parks, as guardian and trustee of the person and estate of our minor children, Annie L. Parks, Goldie Ray Parks, Dorthey C. Parks, and Lonnie O. Parks without bond, she to have control, management and right to dispose of any and all property belonging to said minors, without the supervision and orders of the Probate Court of the State of Texas, or the State of Oklahoma, hereby giving her full authority to sell, rent, lease, manage and dispose of any part of their estate, and to reinvest same in any manner that to her may seem for the best interest of their estate, she to be the judge thereof. In case of a partition of the property and she remains the guardian of our children and their estate, I desire she shall continue to act independent of the Court, and shall not be required to give bond, but, I desire that she make the annual reports to the Court as provided by Law.

"Eighth. In the event that my beloved wife, Laura Parks, shall marry again, then I hereby provide that all of her authority as independent executrix without bond shall cease, and that all my property then remaining shall immediately vest in my said children and be partitioned among them share and share alike, as herein provided."

■ Obviously, the power to mortgage the trust estate was not expressly given by the will, thus, if it existed at all, it must be derived by necessary implication from the language of the will. Jackson v. Templin, Tex.Com.App., 66 S.W.2d 666, 92 A.L.R. 873. The intention of the testator must control, and that intention must be gathered from the four corners of the will, ascertained by considering the entire instrument. The language of a single clause of it will not govern the evident intention of the testator in the use of that language, when read in connection with the other provisions. Faulk v. Dashiell, 62 Tex. 642, 50 Am.Rep. 542; Cleveland v. Cleveland, 89 Tex. 445, 35 S.W. 145. If Laura Parks had the power to borrow the money involved in this suit and to pledge as security therefor the property of the estate, then such power must have been actually conferred upon her by the will.

■ The will of O. F. Parks expressly conferred the power upon his wife to manage and control the property, to rent and lease it, and if need be, to sell and dispose of it for the maintenance of herself and children, or for reinvestment, and to exercise discretion over "the property to be sold and the necessity for the sale". The separately enumerated powers conferred, standing alone, do not carry with them the power to mortgage. To "manage" or "control", to "rent", "lease" or "sell", or to "dispose of" do not within their definition include nor imply the power to mortgage (Reese v. Medlock, 27 Tex. 120, 84 Am. Dec. 611; First Nat. Bank of Nacogdoches v. Hicks, 24 Tex.Civ.App. 269, 59 S.W. 842; First Nat. Bank of Houston v. Weiner, Tex.Civ.App., 253 S.W. 615; Jackson v. Templin, Tex.Com.App., 66 S.W.2d 666, 92 A.L.R. 873), unless the intent and purposes of the entire instrument are such that the power to mortgage is implied by the use of all of them conjunctively.

■ To manage and control an estate, with full power and authority to sell and dispose of the property, evidenced, we think, the intention to give authority to sell and convey by instruments of writing, besides deeds. The term "sell and dispose of" has been held to include the power to make a mortgage, where the purposes of the in-

strument were such that the power to make a mortgage was implied. Faulk v. Dashiell, 62 Tex. 642, 50 Am.Rep. 542. No such implication, however, can ever arise in contravention of the intention of the party executing the instrument.

■ In the case of Faulk v. Dashiell, the independent executor under the will of the testatrix borrowed money and gave a deed of trust upon real estate belonging to the testatrix's estate. Default was made in payment of the debt, the land was sold by the trustee, and title thereby vested in Faulk. The suit was in trespass to try title, alleging that the executor had no power under the will to mortgage the property. The will provided: "It is my will and desire, and I hereby direct that my executor take full charge of my entire estate and manage and control the same as he may think best for the interest of my children before named, and I hereby fully empower him, my executor, to sell, exchange and dispose of my estate as he may deem necessary for the interest of my said children, being responsible, to no one, and do direct that no bond be required of my executor, and that no further proceedings be had on my estate by the probate court than the probating of this, my last will and testament, and the return of an inventory and appraisement of my estate. It is my will and desire, and in conformity that I hereby direct, that my executor take charge of my entire estate and manage and control the same for the support, maintenance and liberal education of my children aforesaid, and when my children attain lawful age it is my will and desire, and I hereby direct, that the residue, remaining in the hands of my executor, after raising and educating my children aforesaid, be equally divided among my said children."

The Supreme Court in that case held that the will authorized the executor to mortgage the trust estate, and, in so holding, the court stressed the following features of the will, evidencing the intention of the testator to confer the power and authority upon the executor to mortgage the property of the estate; opposite them, we placed the corresponding features of the Parks' will:

"* * * take charge of my entire estate and manage and control the same for the support, maintenance and liberal education of my children * * *."

"* * * and I hereby fully empower him, my executor, to sell, exchange and dispose of my estate as he may deem necessary for the interest of my said children * * *."

"purpose of maintenance and education of our said children or for the purpose of reinvesting same * * * I hereby give my wife full management and control of my estate * * * for the purpose of maintaining herself and our children and for the purpose of reinvestment and to reinvest same as to her may seem for the best interest of our estate * * * she to have control, management and right to dispose of any and all property belonging to said minors, without the supervision and orders of the probate court of the state of Texas, or the state of Oklahoma * *."

"* * * with full authority and right to sell and dispose of any portion of my said estate for the purpose of maintenance and education of our said children or for the purpose of reinvesting same, she to be the exclusive judge of the property to be sold and of the necessity for the sale, as well as the reinvestment of same * * * with authority to sell and make deed or deeds of conveyance to any part or parts thereof for the purpose of maintaining herself and our children and for the purpose of reinvestment and to reinvest same as to her may seem for the best interest of our estate, and I hereby give her full authority to reinvest any part of said estate as to her may seem for the best interest of my estate * * * she to be the exclusive judge of the necessity to sell, and of the kind of investment to be made. * * * she to have control, management and right to dispose of any and all property, * * * hereby giving her full authority to sell, rent, lease, manage and dispose of any part of their estate, and to reinvest same in any manner that to her may seem for the best interest of their estate, she to be the judge thereof."

| Dashiell Will | Parks' Will |
| --- | --- |
| "* * * take full charge of my entire estate and manage and control the same as he may think best for the interest of my children | "* * * the right to manage, control and lease any and all of my property during her natural life or widowhood, * * * for the |

"* * * and when my children attain lawful age it is my will and desire, and I hereby direct, that the residue remaining in the hands of my executor, after raising and educating my children aforesaid, be equally divided among my said children."

"In case my wife, Laura Parks, shall marry again, or in case she should grossly mismanage or squander my estate, then and in that event, I desire that all of my property on hand shall go to my said children, and I hereby bequeath to them, (naming them) the remainder of my estate then on hand· * * * In the event that my beloved wife, Laura Parks, shall marry again, then I hereby provide * * * that all my property then remaining shall immediately vest in my said children * * *."

It will be observed that the Dashiell will and the Parks will are identical in (1), giving general power of "management and control", (2) giving special power not only to sell, but also to dispose of any part of the estate, and (3) giving to the children, upon cessation of the trust, only the residue of the property then remaining on hand. Each of these three features, common to the two wills, were deemed important, and the concurrence of all three in a single will was held determinative of an intent to give the power to mortgage.

It is plain, we think, that the Parks' will was fashioned from the Dashiell will, expressing an implied intention to confer the power to mortgage. Both wills expressed the primary object of maintenance and education of the children, conferred full power of management, control, and disposition for the accomplishment of such objects. Both wills anticipated that a part, or possibly the whole, of the estate may be employed in maintaining and educating their children, thus conferring plenary power of sale or other disposition of the estate, and bequeathing to the children the residue upon the termination of the trust. Both wills expressed the maximum confidence in the judgment and faithfulness of the trustee, removed all supervision or control by the courts, or otherwise, over the conduct of the trustee, and gave to the trustee the power of decision for the best interest of the estate, designed to give flexibility to the trustee's conduct and to remove all possible barriers to a free exercise of the trustee's discretion. Both wills indicate that an expansive meaning be attributed to the expression "dispose of", and that such expression mean something more than mere sale. No reason exists for the testator to have used the term "sale and dispose of", except to extend the generality of the powers intended to be conferred by the will. The power to mortgage is the result reached by looking to the will in its entirety, and giving full effect to all its parts.

A very similar provision, as in the Dashiell Case, and in the one at bar, was under consideration in the case of Prieto v. Leonards, 32 Tex.Civ.App. 205, 74 S.W. 41, writ denied, by which the executor was authorized [page 42] "to handle, manage and control my said estate after my death, with full power and authority to sell, release and convey by deed or other conveyance any and all property owned by me at the time of my death, in such a manner as may him, my said executor, may seem right and proper". The court held, approved by our Supreme Court, that there was ample authority conferred by the will on the executor to mortgage the land, citing the Dashiell Case, and said as to it: "The absolute correctness of that decision has never been called in question, but it has in several instances been cited and approved. In the case of Quisenberry v. Watkins Land Co., 92 Tex. 247, 47 S.W. 708, it was held that the power to sell and dispose of the property was controlled by another clause of the will, which had the effect to prescribe that the sale should be only one that dispossessed the executor of the title to the land. The case of Faulk v. Dashiell was cited, and its force and authority was not questioned."

There are many Texas cases which follow the Dashiell Case and which, we think, have established the rule of stare decisis. Indeed, the doctrine announced has become a rule of property, and litigants would suffer great loss if it were now overturned. As has been stated by Judge Speer in Benavides v. Garcia, Tex.Com.App., 290 S.W. 739, 740, "While the rule is not unbending, and the courts are not without power to depart from a prior ruling, or of course to overrule it, where cogent reasons exist, and where the general interest will suffer less by such departure, than from a strict adherence (Higgins v. Bordages, 88 Tex. 458, 31 S.W. 52, 803, 53 Am.St.Rep. 770), yet a due regard for the stability of rights acquired under the law as announced by the highest court of the state, to say nothing of the propriety of uniformity of decision by that court, requires that when a question of law has been definitely settled once it should remain the law unless there

exists the strongest reasons for changing it."

The Parks' will here involved has been before the Supreme Court of Oklahoma on three different occasions, once upon the question whether Laura Parks had the right to sell a part of the Oklahoma property, and twice on the question of her right to mortgage. On the first occasion, Parks v. Lefeber, 162 Okl. 265, 20 P.2d 179, 86 A.L.R. 392, the court held that Laura Parks, as trustee, was authorized to convey, and expressly declined to determine her right to mortgage, assigning the reasons, "that the record shows that she did not mortgage it". [page 182.] On the two subsequent occasions, Parks v. Illinois Life Ins. Co., 176 Okl. 63, 54 P.2d 392, and Parks et al. v. Producers Nat. Bank of Tulsa, 176. Okl. 67, 54 P.2d 398, the court held that Laura Parks possessed the power to mortgage the land of the estate, saying [page 397]: "We are of the opinion that, under the broad power conferred by said instrument, she would have been authorized to borrow the necessary funds for the purposes aforesaid, and to have secured the same by deed of trust on the property in controversy. In other words, the language aforesaid conferred upon the widow the right to sell for cash, on time, or to mortgage the property, in order to raise the necessary funds for the support and maintenance of herself and children. The conclusion thus reached is supported by the great weight of modern authority. [Citing numerous decisions.]"

Analyzing the Parks' will in light of the adjudicated cases, the broad powers conferred giving her (paragraph 3), "the right to manage, control and lease any and all of my property * * * with full authority and right to sell and dispose of any portion of my estate * * * she to be the exclusive judge of the property to be sold and of the necessity for the sale * * * independent of the action of any court"; and (paragraph 4), giving to her "full management and control of my estate with authority to sell and make deed or deeds of conveyance * * * and to reinvest, etc."; and, as guardian and trustee of her children (paragraph 7), giving to her "full authority to sell, rent, lease, manage and dispose of any part" of the trust estate, she was authorized to execute the mortgages, and it did not devolve upon the lenders to judge the necessity for the funds loaned to her or the proper application of it. The trustee was made judge of the necessity, and responsible for the funds application.

The decision resting exclusively on the construction of the will, there being no ambiguity in its terms, all other assignments, after being carefully considered, are overruled; the judgment of the court below is affirmed.

Affirmed.